1

2

3

4

5

6

7

8

9              IN THE UNITED STATES DISTRICT COURT

10                  FOR THE DISTRICT OF OREGON

11  ROBERT MAYORGA,                )
                                   )
12                  Plaintiff,     )
                                   )    No.  CV-06-882-HU
13        v.                       )
                                   )
14  COSTCO WHOLESALE CORPORATION,  )
    a Washington corporation,      )    OPINION & ORDER
15                                 )
                    Defendant.     )
16  _____   )

17  Michael B. Mendelson
    LAW OFFICES OF MICHAEL B. MENDELSON
18  650 Pioneer Tower
    888 S.W. Fifth Avenue
19  Portland, Oregon 97204

20       Attorney for Plaintiff

21  Steven D. Olson
    TONKON TORP LLP
22  1600 Pioneer Tower
    888 S.W. Fifth Avenue
23  Portland, Oregon 97204-2099

24       Attorney for Defendant

25  HUBEL, Magistrate Judge:

26       Plaintiff  Robert  Mayorga  brings  this  negligence  and

27  "outrageous  conduct"  action  against  defendant  Costco  Wholesale

28  Corporation, arising out of a purchase of alcohol made by plaintiff

    1 - OPINION & ORDER

1 at defendant's store in Redding, California.

2     Defendant moves for summary judgment.  Plaintiff moves to

3 amend the complaint to add a claim of indemnity.  Both parties have

4 consented to entry of final judgment by a Magistrate Judge in

5 accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. §

6 636(c).  I grant the summary judgment motion and deny the motion to

7 amend.

8                        BACKGROUND

9     The parties have stipulated to the following facts, although

10 defendant makes clear that its stipulation is for the purposes of

11 summary judgment only and it will contest the asserted facts if the

12 summary judgment motion is denied.  Thus, for the summary judgment

13 motion, defendant stipulates to the following facts:

14     Plaintiff's Fact No. 1:  Robert J. Mayorga and his wife were

15 vacationing in California in April, 2006.  While returning from

16 their vacation in California, Mr. Mayorga, a Costco Wholesale

17 Corporation member, stopped at the Costco warehouse store in

18 Redding, California, on April 14, 2006, because he understood that

19 alcoholic beverages were less expensive in California than in

20 Oregon.

21     Plaintiff's Fact No. 2:  Mr. Mayorga's stepson was being

22 married in September and Mr. Mayorga, being in California anyway,

23 decided to take the opportunity to purchase alcoholic beverages at

24 Costco's low prices and buy several cases of distilled alcoholic

25 beverages for the wedding and to bring home to other family

26 members.  Mr. Mayorga purchased $1,066.65 worth (including $72.10

27 tax) of wine and distilled spirits at the Redding Costco warehouse

28 store.

2 - OPINION & ORDER

1    Plaintiff's Fact No. 3:  Costco chose to locate a warehouse

2 store in Redding, California, and the particular location of that

3 store in Redding, on many factors, including its proximity to

4 Interstate 5 and the interstate travel patterns of its members.

5 Costco intended for its Redding warehouse store to attract

6 interstate travelers and vacationers such as Mr. Mayorga.  Costco

7 knew that a substantial number of those interstate travelers were

8 Oregonians and almost all interstate travelers northbound from

9 Redding would cross into Oregon.

10    Plaintiff's Fact No. 4:  Costco had actual knowledge of the

11 provisions of the Oregon Liquor Control Act (OLCA), including the

12 provisions of Oregon Revised Statute § (O.R.S.) 471.450 limiting

13 the importation of alcoholic beverages into Oregon.

14    Plaintiff's Fact No. 5:  Costco knew the Oregon Liquor Control

15 Commission (OLCC) published a monthly list of the prices it charged

16 for alcoholic beverages and considered that list in setting its own

17 prices.   Costco knew it would be able to price its alcoholic

18 beverages to undersell the OLCC and deliberately marketed its

19 alcoholic beverages in competition with the OLCC.

20    Plaintiff's Fact No. 6:  The OLCC had communicated with Costco

21 expressing concern about Costco's sale of alcoholic beverages to

22 persons transporting their Costco purchases to or through Oregon in

23 violation of the OLCA.

24    Plaintiff's Fact No. 7:  Costco knew persons transporting more

25 than two cases of wine, two cases of malt beverage, or four liters

26 of distilled liquor not procured from or through the OLCC into

27 Oregon, were in violation of O.R.S. 471.450 and committing a crime

28 punishable as a misdemeanor.

3 - OPINION & ORDER

1    Plaintiff's Fact No. 8: Costco made a deliberate decision not

2  to warn its members of the risk of transporting alcoholic beverages

3  into Oregon.  A significant factor in Costco's decision not to warn

4  its members of the risk of transporting alcoholic beverages into

5  Oregon was Costco's concern that such warnings would adversely

6  affect its sales, including the sale of alcoholic beverages.

7    Plaintiff's Fact No. 9:  Costco uses extensive computer

8  technology to track purchases by its members and the sale of its

9  products, including breakdowns in demography and by the product

10  purchased.  Mr. Mayorga is a Costco member and all of his personal

11  and purchase information are contained in Costco's computer system

12  and readily accessible at any check out register.  Costco has

13  readily accessible data concerning the type and amount of alcoholic

14  beverages sold to its members and the demographics of the purchaser

15  and tracks the sale of alcoholic beverages to best target potential

16  purchasers.

17    Plaintiff's Fact No. 10:  Costco knows out-of-state members

18  shopping at the Redding warehouse store, especially Oregonians,

19  constitute a substantial part of the alcoholic beverage market at

20  the Redding warehouse store for the sale of alcoholic beverages.

21    Plaintiff's Fact No. 11:  Costco's computer system can easily

22  be programmed with relatively little expense to print messages on

23  its sale receipts.  Costco's computer system can also be easily

24  programmed with relatively little expense to notify its cashiers to

25  take particular action for a particular sale, such as asking for

26  identification when alcoholic beverages are sold, which it already

27  does.

28    Plaintiff's Fact No. 12:  Under California law, Mr. Mayorga's

4 - OPINION & ORDER

1  purchase required Costco to have him fill out a certification that

2  "all alcoholic beverages purchased by me at Costco are for personal

3  consumption and are not for any type of resale."  Mr. Mayorga was

4  purchasing the alcoholic beverages for his personal use and not for

5  resale and signed the form presented by Costco.

6      Plaintiff's Fact No. 13:  Mr. Mayorga believed he was in full

7  compliance with the law and loaded the cases of spirits openly into

8  the back of his pick-up truck.  He did not raise the tailgate of

9  his truck or make any attempt to cover or conceal his purchase,

10 believing he was in full compliance with the law since the

11 alcoholic beverages were not going to be resold.  To Mr. Mayorga,

12 the alcoholic beverages purchased were just another commodity and

13 he had no reason to believe entering Oregon with his purchase

14 constituted a criminal act under the provisions of the OLCA.

15     Plaintiff's Fact No. 14:  There were no warning signs or

16 postings at Costco or elsewhere that bringing into Oregon more than

17 four liters per adult of distilled spirits not purchased from the

18 OLCC was a violation of Oregon law, much less a crime.

19     Plaintiff's Fact No. 15:  On April 14, 2006, at approximately

20 8:30 p.m., Mr. Mayorga was stopped for exceeding the speed limit by

21 an Oregon State Police Officer near Sutherlin, Oregon.  The officer

22 observed the cases of alcoholic liquor in plain sight in the back

23 of the truck and placed Mr. Mayorga under arrest.  The officer,

24 upon information from an OLCC representative, was instructed to

25 seize all of the liquor, and Mr. Mayorga was cited and released on

26 his own recognizance.  After amendment of the original citation,

27 Mr. Mayorga was prosecuted for violation of O.R.S. 471.405(2),

28 alleging that "[t]he said defendant on or about April 14th, 2006,

5 - OPINION & ORDER

1  in Douglas County, Oregon, did unlawfully and knowingly transport

2  or import alcoholic liquor not procured from or through the Oregon

3  Liquor Control Commission, contrary to the statutes in such cases

4  made and provided and against the peace and dignity of the State of

5  Oregon."   Violation of O.R.S. 471.450(2) is punishable as a

6  misdemeanor under O.R.S. 471.990.

7       Plaintiff's Fact No. 16:  Mr. Mayorga was required to appear

8  for arraignment in Roseburg, Oregon and had to retain an attorney

9  at substantial expense to defend him. Mr. Mayorga's attorney was

10 compelled in the course of conducting Mr. Mayorga's defense, to

11 file legal objections, memoranda of law, and appear for oral

12 argument in Roseburg.

13                              STANDARDS

14 I.  Summary Judgment

15      Summary judgment is appropriate if there is no genuine issue

16 of material fact and the moving party is entitled to judgment as a

17 matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the

18 initial responsibility of informing the court of the basis of its

19 motion, and identifying those portions of "'pleadings, depositions,

20 answers to interrogatories, and admissions on file, together with

21 the affidavits, if any,' which it believes demonstrate the absence

22 of a genuine issue of material fact."   Celotex Corp. v. Catrett,

23 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

24      "If the moving party meets its initial burden of showing 'the

25 absence of a material and triable issue of fact,' 'the burden then

26 moves to the opposing party, who must present significant probative

27 evidence tending to support its claim or defense.'"   Intel Corp. v.

28 Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991)

6 - OPINION & ORDER

1  (quoting Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th

2  Cir. 1987)).  The nonmoving party must go beyond the pleadings and

3  designate facts showing an issue for trial.  Celotex, 477 U.S. at

4  322-23.

5      The substantive law governing a claim determines whether a

6  fact is material.  T.W. Elec. Serv. v. Pacific Elec. Contractors

7  Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  All reasonable doubts as

8  to the existence of a genuine issue of fact must be resolved

9  against the moving party.  Matsushita Elec. Indus. Co. v. Zenith

10 Radio,  475 U.S. 574, 587 (1986).  The court should view inferences

11 drawn from the facts in the light most favorable to the nonmoving

12 party.  T.W. Elec. Serv., 809 F.2d at 630-31.

13     If the factual context makes the nonmoving party's claim as to

14 the existence of a material issue of fact implausible, that party

15 must come forward with more persuasive evidence to support his

16 claim than would otherwise be necessary.  Id.; In re Agricultural

17 Research and Tech. Group, 916 F.2d 528, 534 (9th Cir. 1990);

18 California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics,

19 Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).

20 II.  Amendment

21     Federal Rule of Civil Procedure 15(a) provides that leave to

22 amend a complaint "shall be freely given when justice so requires."

23 The court should apply the rule's "policy of favoring amendments

24 with extreme liberality."  DCD Programs, Ltd. v. Leighton, 833 F.2d

25 183, 186 (9th Cir. 1987) (internal quotation omitted).   In

26 determining whether to grant a motion to amend, the court should

27 consider bad faith, undue delay, prejudice to the opposing party,

28 futility of amendment, and prior amendments to the complaint.

7 - OPINION & ORDER

1 | Sisseton-Wahpeton Sioux Tribe v. United States, 90 F.3d 351, 355-56

2 | (9th Cir. 1996).  Delay, by itself, will not justify denying leave

3 | to amend.  DCD Programs, 833 F.2d at 186.

4 |                              DISCUSSION

5 | I.  Choice of Law Issue

6 |      Although the parties rely on different reasoning, they agree

7 | that Oregon law controls the case.  I agree Oregon law applies

8 | because there is no difference in the outcome of the case whether

9 | applying Oregon or California law.  Patton v. Cox, 276 F.3d 493,

10 | 495 (9th Cir. 2002) (when deciding conflict of law questions based

11 | on state law claims, the district court applies the conflict of law

12 | principles of the forum state); CollegeNET v. Xap Corp., No. CV-03-

13 | 1229-HU, 2004 WL 2303506, at *13 (D. Or. Oct. 12, 2004) (under

14 | Oregon  law,  if  there  is  no  material  difference  between  the

15 | substantive law of Oregon and the law of other forum, there is a

16 | "false conflict" for purposes of the choice of law and Oregon law

17 | applies).

18 | II.  Summary Judgment Motion

19 |      A.  Negligence Claim

20 |      Defendant argues that it is entitled to summary judgment on

21 | plaintiff's negligence claim because:

22 |      (1) defendant had no duty to warn plaintiff given the absence

23 | of a special relationship between the parties and the fact that

24 | plaintiff seeks economic damages only;

25 |      (2) even if there was a duty, defendant did not breach it

26 | because (a) the hazard was obvious; (b) the standard of care does

27 | not require  such  warnings;  and  (c)  the  risk  of  harm  was  not

28 | reasonably foreseeable;  and

8 - OPINION & ORDER

1        (3) any lack of warning was reasonable.

2        I agree with defendant that the law in Oregon is such that to

3  sustain a negligence claim in which only economic damages are

4  alleged, the plaintiff must show the existence of a special

5  relationship between the parties.  Although the concept of "duty"

6  in Oregon negligence claims has only limited application since the

7  Oregon Supreme Court's decision in <u>Fazzolari v. Portland Sch. Dist.</u>

8  <u>No. 1J</u>, 303 Or. 1, 734 P.2d 1326 (1987), duty remains an issue when

9  the plaintiff seeks damages for purely economic losses.  <u>Oregon</u>

10 <u>Steel Mills, Inc. v. Coopers & Lybrand, LLP</u>, 336 Or. 329, 341, 83

11 P.3d 322, 328 (2004).

12          One ordinarily is not liable for negligently causing a
            stranger's purely economic loss without injuring his
13          person or property. . . .  Instead, the plaintiff is
            required to allege some source of a duty outside the
14          common law of negligence. . . . [L]iability for purely
            economic harm must be predicted on some duty of the
15          negligent actor to the injured party beyond the common
            law duty to exercise reasonable care to prevent
16          foreseeable harm.

17 <u>Id.</u> (citations and internal quotations omitted).

18       I further agree with defendant that there is no special

19 relationship between the parties.  All of the allegations and

20 evidence bespeak of only an arms-length transaction between a

21 retailer and a consumer and nothing more.  Such a relationship is

22 not "special" as that term has been defined in the context of

23 Oregon negligence law.  <u>E.g.</u>, <u>Conway v. Pacific Univ.</u>, 324 Or. 231,

24 239-41, 924 P.2d 818, 823-24 (1996) (listing types of relationships

25 in which one party owes the other a duty to exercise reasonable

26 care beyond the common law duty to prevent foreseeable harm); <u>Onita</u>

27 <u>Pacific Corp. v. Trustees of Bronson</u>, 315 Or. 149, 160-62, 843 P.2d

28 890, 896-97 (1992) (same).

9 - OPINION & ORDER

1      Moreover, contrary to plaintiff's contention, I do not read

2   Onita or Conway to suggest any variation to the rule that the

3   existence of a special relationship is required to prevail in a

4   negligence claim where only economic harm is alleged.  I note that

5   here,   unlike   in   Onita,   plaintiff   has   not   pleaded   a

6   misrepresentation claim of any kind, but rather, has pleaded only

7   a negligence claim.  The Complaint, and even the proposed Amended

8   Complaint,  contain  no  intimation  of  a  fraud  or  intentional

9   misrepresentation claim.  This case concerns only a straightforward

10  claim  for  negligence,  based  on  defendant's  failure  to  inform

11  plaintiff of Oregon liquor laws.

12      Nonetheless, while I agree with defendant on the elements of

13  the law, I cannot grant summary judgment to defendant based on this

14  particular  argument  because  I  do  not  view  the  allegations  as

15  asserting a claim for only economic damages.   In the context of

16  Oregon negligence claims, "economic losses" are distinguishable

17  from damages for injury to person or property.  See, e.g., Onita,

18  315 Or. at 159 n.6, 943 P.2d at 896 n.6 ("we use the term 'economic

19  losses' to describe financial losses such as indebtedness incurred

20  and return of monies paid, as distinguished from damages for injury

21  to person or property.") (emphasis added).

22      Although most of the damages sought by plaintiff are economic,

23  (for example, the cost of hiring an attorney to defend him in the

24  underlying criminal case), I cannot agree with defendant that the

25  confiscation of his property by the police is not an "injury to

26  property" requiring plaintiff to prove a special relationship in

27  support of his negligence claim.

28      Defendant  notes  that  O.R.S.  31.710(2)(a)  defines  economic

10 - OPINION & ORDER

1  damages as including the "reasonable and necessarily incurred costs

2  due to the loss of use of property and reasonable costs incurred

3  for . . . replacement of damaged property."  Defendant argues that

4  this definition supports its argument that plaintiff claims nothing

5  more than economic damages in his negligence claim.

6       I reject this argument because the cited definition was

7  adopted as part of a tort reform statute designed to limit certain

8  damages.[1]  Defendant has provided no basis for me to read into this

9  statute a legislative intent for the cited statutory definition to

10 control the common law developed by the Oregon courts in regard to

11 the application of the "special relationship - economic loss only"

12 negligence claim context.  Thus, on the record before me, I assume

13 that plaintiff's damages allegations may present something more

14 than economic harm.

15      Nonetheless, I grant summary judgment to defendant based on

16 defendant's arguments that the hazard was obvious and that

17 plaintiff has failed to show that defendant breached the relevant

18 standard of care.

19      First, it is generally the law in Oregon that a duty to warn

20 is owed only as to risks that are not generally known or obvious.

21 See Crosswhite v. Jumpking, Inc., 411 F. Supp. 2d 1228, 1235 (D.

22 Or. 2006) (manufacturer not liable for "unreasonably dangerous

23 product" on a failure to warn theory when the danger is "'open or

24

25      [1] Subsection (1) of the statute, originally passed as
    O.R.S. 18.560, which limits the amount of damages, was declared
26 unconstitutional by the Oregon Supreme Court in Lakin v. Senco
    Products, Inc., 329 Or. 62, 987 P.2d 463, clarified, 329 Or. 369,
27 987 P.2d 476 (1999).

28

11 - OPINION & ORDER

1  obvious' or 'generally known and recognized'") (quoting <u>Gunstone v.</u>

2  <u>Julious Blum GMbH</u>, 111 Or. App. 332, 336, 825 P.2d 1389 (1992)

3  (holding that jury instruction used by trial court properly stated

4  law that if the jury were to find that the danger presented by a

5  drill press was generally known and recognized, then the

6  manufacturer had no duty to warn of that danger and the machine was

7  not unreasonably dangerous due to a lack of warning)); <u>see also</u>

8  <u>Benjamin v. Wal-Mart Stores, Inc.</u>, 185 Or. App. 444, 454, 61 P.3d

9  257, 264 (2002) (citing comment j to Restatement (Second) of Torts

10 § 402A for proposition that seller is not required to warn with

11 respect to products when the danger, or potentiality of danger, is

12 generally known and recognized).

13     Defendant argues that the "hazard" here is generally known and

14 obvious because all citizens are required to know and comply with

15 the law and defendant was entitled to presume that plaintiff would

16 act lawfully.   Or. Evid. Code 311 ("(1) The following are

17 presumptions: . . . (x) The law has been obeyed."); <u>see also</u> <u>Cree</u>

18 <u>v. Tannich</u>, 220 Or. 606, 610, 349 P.2d 1094, 1097 (1960)

19 (pedestrian plaintiff had the right to presume that others would be

20 obeying the law and would be operating their vehicles with lights

21 and at a lawful speed).

22     In response, plaintiff does not challenge the assertion that

23 there is no liability for a failure to warn when the hazard is

24 obvious or known.   Rather, plaintiff notes that Oregon Evidence

25 Code 311 does not include a presumption that an individual knows

26 the law; rather, the listed presumption is that the law has been

27 obeyed.   Moreover, plaintiff continues, under Oregon Evidence Code

28

12 - OPINION & ORDER

308[2], a judicially created presumption is a rebuttable presumption and plaintiff's asserted facts rebut the presumption.

Plaintiff misses the point. As the Oregon Court of Appeals recently emphasized, "[a]ll persons are presumed to know the law that is relevant to them." Scherzinger v. Portland Custodians Civil Service Bd., --- P.3d ----, 2006 WL 3501237, at *6 (Or. App. Dec. 6, 2006); see also Bartz v. State, 314 Or. 353, 359-60, 839 P.2d 217, 221 (1992) ("It is a basic assumption of the legal system that the ordinary means by which the legislature publishes and makes available its enactments are sufficient to inform persons of statutes that are relevant to them.:); Dungey v. Fairview Farms, Inc., 205 Or. 615, 621, 290 P.2d 181, 184 (1955) ("Every person is presumed to know the law[.]").

Defendant does not argue that plaintiff's claim fails because defendant is entitled to an evidentiary presumption that plaintiff would comply with the law. Defendant argues that because the law provides a presumption that the law will be obeyed, it necessarily follows that the requirements of the law are generally known or obvious. Thus, under Oregon law, no warning was required. I agree with defendant. Plaintiff's claim fails because the "hazard," the OLCA, which was duly promulgated and published by the Oregon Legislature, is generally known and obvious and plaintiff is presumed to know and obey the law. Thus, defendant owed no duty to warn plaintiff about such a "hazard."

---

[2] OEC 308 provides that "In civil actions and proceedings, a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence."

13 - OPINION & ORDER

1    Second, in a failure to warn negligence case, a plaintiff must
2    show that a merchant's conduct fell below the acceptable standard
3    of care.  E.g., Griffith v. Blatt, 158 Or. App. 204, 214, 973 P.2d
4    385, 390 (1999) (plaintiff's claim for negligent failure to warn
5    failed because plaintiff did not submit evidence establishing the
6    requisite standard of care for pharmacists prescribing prescription
7    drugs), aff'd in part, rev'd in part, 334 Or. 456, 51 P.3d 1256
8    (2002); cf. Glover v. BIC Corp., 6 F.3d 1318, 1325 (9th Cir. 1993)
9    (en banc) (plaintiff met burden of establishing a breach of the
10   standard of care by showing, inter alia, that no reasonable lighter
11   manufacturer would sell a lighter which failed to meet "ASTM"
12   standards for extinguishment).

13   Defendant states that it is unaware of any California merchant
14   which provides warnings to its customers about the laws of foreign
15   states.  Berry Declr. at ¶ 13.  Additionally, in the pleadings
16   filed in the criminal case in Oregon state court, plaintiff
17   admitted that he purchased alcoholic beverages from another
18   California merchant on the same day that he purchased the alcohol
19   from defendant and no warning was given.  Exh. 1 to Olson Declr.

20   Plaintiff offers no argument, and more importantly, no
21   evidence in response to this argument.  Thus, I agree with
22   defendant that plaintiff has failed to create an issue of fact on
23   the question of whether defendant's conduct fell below the
24   acceptable standard of care. Accordingly, because the "hazard" was
25   obvious, and because plaintiff fails to show that defendant's
26   conduct breached the standard of care, I grant defendant's motion
27   for summary judgment on the negligence claim.

28   B.   Intentional Infliction of Emotional Distress Claim

14 - OPINION & ORDER

1    To sustain an intentional infliction of emotional distress
2  claim, plaintiff must show that defendant intended to inflict
3  severe emotional distress, that defendant's acts were the cause of
4  plaintiff's severe emotional distress, and that defendant's acts
5  constituted an extraordinary transgression of the bounds of
6  socially tolerable conduct.  McGanty v. Staudenraus, 321 Or. 532,
7  563, 901 P.2d 841, 849 (1995).

8    Plaintiff contends that defendant acted with reckless and
9  outrageous indifference to the highly unreasonable risk of criminal
10 prosecution of its members in order to bolster its profits by
11 deliberately failing to advise its members of the possibility of
12 criminal prosecution.  Compl. at ¶ 10.  Although in the Complaint,
13 or even in the proposed Amended Complaint, plaintiff does not
14 allege that he actually suffered severe emotional distress,
15 plaintiff submits a belated declaration in which he describes the
16 emotional distress he allegedly suffered as a result of the arrest
17 and criminal prosecution for his violation of the OLCA.  Dec. 18,
18 2006 Declr. of Robert Mayorga.  I incorporate the declaration into
19 the summary judgment record.

20    Nonetheless, I grant summary judgment to defendant on this
21 claim because as a matter of law, defendant's conduct was not
22 severe or outrageous.  As noted above, to sustain his claim,
23 plaintiff must show that defendant's action "constituted an
24 extraordinary transgression of the bounds of socially tolerable
25 conduct."  Babick v. Oregon Arena Corp., 333 Or. 401, 411, 40 P.3d
26 1059, 1063  (2002) (internal quotation omitted).  Conduct that is
27 merely "rude, boorish, tyrannical, churlish, and mean" does not
28 support an IIED claim.  Patton v. J.C. Penney Co., 301 Or. 117,

15 - OPINION & ORDER

1 | 124, 719 P.2d 854, 858 (1986).  Thus, Oregon courts have refused to
2 | find liability where an employee was terminated for refusing to
3 | pull down his pants, Madani v. Kendall Ford, Inc., 312 Or. 198,
4 | 205-06, 818 P.2d 930, 934 (1991), or where the employer threw a
5 | tantrum, screamed and yelled at his employees, accused them of
6 | being liars and saboteurs, and then fired them all.  Watte v.
7 | Maeyens, 112 Or. App. 234, 237, 828 P.2d 479, 480-81 (1992).

8 |      Here, defendant did nothing more than participate in a lawful
9 | sale of consumer goods.  As a matter of law, such conduct does not
10 | rise to the level actionable in a claim of intentional infliction
11 | of emotional distress.  I grant defendant's motion as to this
12 | claim.

13 | II.  Motion to Amend

14 |      In his motion to amend, plaintiff seeks to add a claim of
15 | common law indemnity as follows:

16 |      Plaintiff realleges the facts alleged in paragraphs one
     through eleven, above.  In defending against the criminal
17 |      case in the Oregon Circuit Court, Plaintiff obtained a
     favorable ruling, pending appeal, which benefits Costco
18 |      as well.
     Under the totality of the circumstances alleged herein,
19 |      arising  out  of  Costco's  failure  to  warn  of  the
     consequences attached to its sale of alcoholic beverages
20 |      to Plaintiff aforesaid, responsibility should rest upon
     Costco rather than Plaintiff, and Costco has a duty to
21 |      indemnify Plaintiff thereby.  Plaintiff is entitled to
     indemnification for all of Plaintiffs [sic] expenses
22 |      arising out of the arrest, confiscation and criminal
     defense in connection with the alleged violation of the
23 |      Oregon Liquor Control Act in an amount to be proved at
     trial, not to duplicate any other amount recovered
24 |      herein.

25 | Exh. 1 to Mtn to Amend at ¶ 13.

26 |      In support of the motion, plaintiff argues that not only did
27 | defendant locate its Redding store to take advantage of the
28 | interstate traffic traveling to and from Oregon, but it

16 - OPINION & ORDER

1  intentionally marketed, through prices less than those charged by

2  the OLCC, large quantities of alcoholic beverages in competition

3  with the OLCC knowing it was a crime for its members to enter

4  Oregon with their purchases.

5     Plaintiff notes that defendant rejected plaintiff's tender of

6  his criminal case to defendant.  He argues that defendant

7  inequitably reaps the benefit of his successful defense and thus,

8  he seeks leave to assert a claim for indemnification.

9     In response, defendant contends that the motion should be

10  denied because the claim is futile.  To state a claim for common

11  law indemnity in Oregon, plaintiff must show that:  "(1) he has

12  discharged a legal obligation owed to a third party; (2) the

13  defendant was also liable to a third party; and (3) as between the

14  claimant and the defendant, the obligation ought to be discharged

15  by the latter."  Stovall v. Oregon Dep't of Transp., 324 Or. 92,

16  127, 922 P.2d 646, 665 (1996).

17     "The last requirement means that, although the claimant must

18  have been legally liable to the injured third party, his liability

19  must have been 'secondary' or his fault merely 'passive,' while

20  that of the defendant must have been 'active' or 'primary.'"

21  Maurmann v. Del Morrow Const., Inc., 182 Or. App. 171, 177 48 P.3d

22  185, 188 (2002).  A common law indemnity claim cannot be sustained

23  if the defendant could not have been liable to the third party for

24  the legal obligation satisfied by the claimant.  See Stovall, 324

25  Or. at 127, 922 P.2d at 665 (claim for common law indemnity failed

26  as a matter of law when there was no liability by defendants for

27  the breach of contract); Huff v. Shiomi, 73 Or. App. 605, 609 699

28  P.2d 1178, 1180-81 (1985).

17 - OPINION & ORDER

1    I agree with defendant that plaintiff fails to establish any

2  of the required elements of an indemnity claim.  First, in the

3  Complaint, plaintiff does not allege that he discharged a legal

4  obligation owed to a third party.  But, in the briefing of this

5  motion and at oral argument, plaintiff has contended that he

6  discharged a legal obligation to a third party, the state, by

7  appearing as a criminal defendant in Douglas County and defending

8  against the charges.

9    Plaintiff cites no cases in support of this novel proposition

10 that a person or entity should be required to indemnify a person

11 for the person's criminal liability as opposed to a civil

12 liability.  Without some authority for plaintiff's argument, I

13 decline to adopt it.

14   Second, I reject plaintiff's argument that defendant itself

15 would have been liable to the state under O.R.S. 161.155, which

16 makes a person criminally liable for the conduct of another in

17 certain circumstances, including possessing an intent to promote

18 the commission of the crime.  Under plaintiff's theory, under

19 O.R.S. 161.155, defendant could have been charged with violating

20 O.R.S. 471.405 because defendant is not an OLCC-authorized outlet

21 for distilled alcoholic beverages, it intended to sell large

22 quantities of alcoholic beverages exceeding Oregon's legal limit,

23 and it intended for those alcoholic beverages to be imported into

24 Oregon by its members.  Plaintiff contends that this argument is

25 supported by his Stipulated Facts #s 3, 4, 5, 7, and 8.

26   I disagree.  The stipulated facts do not create a reasonable

27 inference that defendant intended that its customers violate the

28 law.  The facts show that defendant engaged in conduct to support

18 - OPINION & ORDER

1 a perfectly legitimate method to compete with the OLCC by siting

2 its store where it did and by selecting certain prices for its

3 alcoholic beverage products.  But, as long as customers purchased

4 less than the amount regulated by the OLCC for importation, there

5 is no violation of the law.  And if an Oregon resident purchased

6 even more than that amount, there is still no violation of the law

7 if it is not imported to Oregon.  Given the number of legal ways

8 that the alcohol can be sold, the stipulated facts do not reveal an

9 intent by defendant for its customers to violate Oregon law.  Thus,

10 plaintiff cannot sustain the second element of an indemnity claim

11 requiring him to show that defendant was liable to the third party.

12     Third, under the facts in the record, I cannot accept

13 plaintiff's argument that his conduct should be viewed as passive

14 and innocent because of defendant's competition with the OLCC.  As

15 noted above, it is not illegal for defendant to compete with the

16 OLCC.  Plaintiff's conduct cannot be viewed as secondary or

17 passive.

18     Because plaintiff cannot establish an indemnity claim, it

19 would be futile to allow him to amend his Complaint to add such a

20 claim.  Thus, I deny the motion to amend.

21 / / /

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

19 - OPINION & ORDER

1                            CONCLUSION

2        Defendant's motion for summary judgment (#6) is granted.

3  Plaintiff's motion to amend (#32) is denied.

4        IT IS SO ORDERED.

5                    Dated this  24th   day of January     , 2007.

6

7

8                                /s/ Dennis James Hubel
                                 Dennis James Hubel
9  _____United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20 - OPINION & ORDER